**Suhas WAGAL, Appellant**

v.

**SI DIAMOND TECHNOLOGY, INC., Appellee**

No. 01–98–00935–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 8, 1999.

George W. Dana, Houston, for Appellant.

Carl Wimberley, Winstead, Sechrest & Minick, P.C., Houston, for Appellee.

Panel consists of Justices COHEN, O'CONNOR, and WILSON.

## OPINION

COHEN, Justice.

Suhas Wagal sued SI Diamond Technology, Inc. (SIDT) for conversion of laser equipment. The trial judge dismissed Wagal's claim by interlocutory summary judgment and granted a summary judgment in favor of SIDT on its counterclaim for conversion. The judge also granted SIDT $1,000 in damages. We affirm.

### Facts

On June 14, 1996, the parties agreed in writing that Wagal would buy laser equipment from SIDT. Wagal paid SIDT $15,-000 then and promised to pay another $15,000 six months later. The equipment remained on SIDT's property, and Wagal used it there.

In December 1996, Wagal told SIDT that he could not pay the second $15,000 installment and asked for more time. In return for more time, SIDT asked Wagal to sign a UCC security agreement and pay rent for the use of its facilities, but Wagal refused. Wagal then took 18 pieces of equipment from SIDT's facilities without consent; he never paid for them and never returned them. In January 1997, SIDT sold the remaining equipment for $30,000. SIDT then returned to Wagal $15,000, less costs for the equipment's sale and rent of

SIDT's facilities during January 1997. Wagal accepted and deposited SIDT's check for $13,340; Wagal then sued SIDT for conversion of the equipment left with SIDT. SIDT counterclaimed, alleging Wagal converted the equipment he took from SIDT. The trial judge granted a summary judgment against Wagal, granted summary judgment for SIDT, and awarded SIDT $1,000 in stipulated damages.

### Analysis

In two points of error, Wagal contends the trial judge improperly dismissed his conversion action and improperly granted summary judgment for SIDT on its conversion action.

We follow the usual standard of review for summary judgments. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

The sole issue in this case is which party had the right to possess the equipment. If SIDT did, then Wagal converted it when he removed it. If Wagal did, then SIDT converted it by selling it.

■ Wagal argues that SIDT converted the equipment because SIDT did not have a security interest in the equipment. We disagree.

Wagal repudiated his contract with SIDT. When a buyer repudiates a contract, the seller may resort to any remedy for breach provided by the UCC. *See* TEX. BUS. & COM. CODE ANN. § 2.610(2) (Vernon 1994). Tender of delivery entitles the seller to payment. TEX. BUS. & COM. CODE ANN. § 2.507(a) (Vernon 1994). SIDT tendered the goods; therefore, it was entitled to payment. Moreover, "Where payment is due and demanded on the delivery to the buyer of goods ..., his right as against the seller to retain or dispose of them is conditional upon his making the payment due." TEX. BUS. & COM. CODE ANN. § 2.507(b) (Vernon 1994). Thus, any right Wagal had to retain or dispose of the goods was conditional upon his making the payment due.

When he did not make it, he forfeited any right to retain or dispose of the goods. According to the Uniform Commercial Code Comment, "This subsection [2.507(b)] *codifies the cash seller's right of reclamation which is in the nature of a lien.* There is no specific time limit for a cash seller to exercise the *right of reclamation....*" TEX. BUS. & COM. CODE ANN. § 2.507 cmt. 3 (Vernon 1994) (emphasis added). This "right of reclamation" does not depend on who has title. On the contrary, the general rule is that, "Each provision of this chapter [2] with regard to the rights ... and remedies of the seller ... applies irrespective of the title to the goods ...." TEX. BUS. & COM. CODE ANN. § 2.401 (Vernon 1994). Even goods not possessed by the seller may be reclaimed. If goods are possessed by a carrier or a bailee when the buyer repudiates or fails to pay, the seller may stop delivery. TEX. BUS. & COM. CODE ANN. § 2.705 (Vernon 1994). It would be absurd to allow a seller to reclaim goods in transit but not allow a seller to reclaim goods in its possession, as SIDT did here.

Finally, "... *whether or not a security interest is reserved, the seller has rights of resale and stoppage under sections 2–703, 2–705, and 2–706 which are similar to the rights of a secured party.*" TEX. BUS. & COM. CODE ANN. § 9.113 cmt. 1 (emphasis added). "A security interest arising solely under the chapter on Sales (Chapter 2) ... is subject to the provisions of [Chapter 9 on secured transactions] except to the extent that and so long as the debtor does not have or does not legally obtain possession of the goods (1) *no security agreement is necessary to make the security interest enforceable....*" TEX. BUS. & COM. CODE ANN. § 9.113 (Vernon Supp.1999).

Here, SIDT was entitled to resell the equipment and recover damages.[1] Following section 2.703(4), SIDT resold the remaining equipment. That does not constitute conversion because it was allowed by law after Wagal failed to pay. The "right of reclamation" does not have to be created by the contract, as Wagal contends, because it exists by statute. The filing of a UCC–1 with the county clerk or the Secretary of State is unnecessary when, as here, the dispute is between the original parties to the contract. *See* TEX. BUS. & COM. CODE ANN. § 9.113(2) (Vernon Supp.1999). The filing requirements are for the protection of third parties. Consequently, we hold the trial judge did not err by dismissing Wagal's conversion suit.

■ Relying on section 2.401(c), Wagal contends he acquired title when the contract was signed because the equipment was not to be moved, it was identified in the contract, and no title papers were to change hands.[2] That would not allow Wa-

---

1. "Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2.612), then also with respect to the whole undelivered balance, the aggrieved seller may

  (1) withhold delivery of such goods;
  (2) stop delivery by any bailee as hereafter provided (Section 2 .705);
  (3) proceed under the next section respecting goods still unidentified to the contract;
  (4) resell and recover damages as hereafter provided (Section 2.706);
  (5) recover damages for non-acceptance (Section 2.708) or in a proper case the price (Section 2.709);

  (6) cancel."
TEX. BUS. & COM. CODE ANN. § 2.703 (Vernon 1994). *See* Comment 1: "This section ... gathers ... all of the various remedies open to a seller for *any breach* by the buyer." (Emphasis added).

2. "Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
  (1) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
  (2) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."
TEX. BUS. & COM. CODE ANN. § 2.401(c) (Vernon 1994).

gal to prevail. The preamble to section 2.401 provides that a seller's remedies under Chapter 2 generally apply "irrespective of title to the goods ...." The comment to section 2.401 makes clear that, as a general rule, title does not affect a seller's remedies: "That the rules of this section in no way alter the rights of either the buyer, seller or third parties declared elsewhere in the Article [such as sections 2.703, 2.705, and 2.706] is made clear by the preamble of this article." TEX. BUS. & COM. CODE ANN. § 2.401 cmt. 1 (Vernon 1994). Wagal's repudiation and breach gave SIDT the right to exercise its remedies under the UCC. Therefore, we hold the trial judge did not err by granting summary judgment in favor of SIDT.

We overrule both points of error.

We affirm the judgment.